UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Toni Fore
Diamond Griffith

**On behalf of herself and
all others similarly situated**

    **Plaintiffs**

    **v.**                                               **Case No. 19-CV-1488**

**Froedtert Health Inc.**

    **Defendant.**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' FEE PETITION

### INTRODUCTION

The Previant Law Firm S.C. is petitioning for attorneys' fees and costs of $360,000 out of a common fund provided by the parties' settlement agreement totaling $1.2 million. The Court should approve the petition when the market rate for the representation of Plaintiffs in class action wage and hour litigation in Southeastern Wisconsin is 33%, in particular when the parties agreed to mediation after they had completed briefing on motions for summary judgment, so that this case was not settled early. As further evidence of the market rate for Previant's services, the retainer agreement between the Named Plaintiffs and Previant set Previant's fee as 1/3 of the client's recovery. Indeed, the risks that Previant took on in advancing this litigation along with the excellent results that Previant achieved may support an upward adjustment to the market rate of Previant's services. Actual attorneys' fees that Previant is petitioning for represents just under 30% of the common fund of $1.2 million, or about 32% of the common fund if the Court removes the

costs of settlement administration from the common fund. Either way, the petitioned for attorneys' fees should be approved as reasonable. The Court should not conduct a Lodestar cross check for the petitioned for fees both because the client in contingency fee litigation does not care how many hours were spent by the attorney to achieve a favorable outcome; and because the Court should not create incentives for attorneys to prolong litigation to support their fee petitions.

The Court should similarly approve the petitioned for incentive awards of $10,000 for Fore and $5,000 for Griffith. The proposed total incentive awards of $15,000 constitute only 1.25 percent of the common fund; and should be paid to Fore and Griffith as compensation for both services that they rendered to the class; and because by consenting to become named plaintiffs they risked both their future prospects for employment in the healthcare industry, and to incur the obligation to pay Froedtert's costs should the litigation be unsuccessful.

## STATEMENT OF FACTS

Pursuant to retainer agreements between the Previant Law Firm S.C. and Fore and Griffth, the Previant Law Firm is entitled to attorneys' fees equal to either (a) 1/3 of the net recovery after all advanced costs have been reimbursed or (b) attorneys' fees awarded by the Court or settlement, whichever is larger. (Ho Dec. ¶2) To date, Previant has advanced $1,381.65 in costs. (Ho Dec. ¶3) Pursuant to the retainer agreement between the Previant Law Firm and Fore and Griffith, if the litigation is unsuccessful Previant not be entitled to either any attorneys' fees or the recovery of advanced costs from Fore and Griffith. (Ho Dec. ¶2, 3)

The common fund created by the parties' settlement agreement, which is available to be used to pay class members, class representative service awards, administrative costs, and attorneys' fees, is $1.2 million. (Docket #95-1, Art. 3.1) To achieve this result, by the end of November of 2021 the Previant Law Firm had spent more than 300 hours litigating this case. (Ho

Dec. ¶3, Ex. 1) Significant services that Previant provided to advance this case to the stage of seeking final approval from the Court for a settlement creating a common fund of $1.2 million include interviewing Fore and conducting legal research to determine claims that can be advanced on her behalf against Froedtert; drafting and serving the complaint; conducting discovery including written discovery, taking the Rule 30(b)(6) deposition of Froedtert, and defending the deposition of Fore; amending the complaint in light of information obtained through discovery; filing and completing briefing on a motion for conditional certification; filing and completing briefing on a motion for class certification; filing and completing briefing on cross motions for summary judgment; agreeing to mediation; obtaining from Defendants additional information including a sample of time punches by the Defendants' other employees needed to estimate class wide damages; creating a model for estimating class damages based on the information received; agreeing to a settlement that pays to the class about 57% of Froedtert's maximum realistic exposure in the lawsuit, obtaining preliminary approval for the settlement agreement; overseeing the administrator during the process of providing notice of the settlement to the class; and preparing and filing with the Court this motion for final settlement approval. (Ho Dec. ¶4)

Virtually every claim advanced by Plaintiffs in this lawsuit involved legal theories or defenses that were novel at the time the lawsuit was filed in 2019. Such novel claims or defenses include whether time spent signing onto a computer and locking a computer constitute non-de minimis hours worked, whether an employer can erase its failure to credit its employees with their correct start and end times by rounding their incorrect start and end times to the nearest quarter hour, whether an employer complies with the Wisconsin regulation on meal breaks if it permitted the employee to take a full 30 minutes for a meal though the employee took less time for a meal, whether an employer that failed to correctly compute its employees' overtime pay using the rate

for the type of work method (by failing to include weekend premiums that were less than 50% of the employee's rate of pay) can avoid liability by showing the employee would have received even less overtime pay had it been correctly computed using the regular rate method, and whether gym attendance payments and incentive payments for participating in a wellness program should be included in computing the regular rate. (Ho Dec. ¶5)

Services provided by Toni Fore to the class include initiating contact with class counsel and serving as the sole Plaintiff known to class counsel between October of 2019 and July of 2020; verifying written discovery responses; preparing for, attending, and testifying at her deposition; editing and approving declarations that were submitted to the Court on the parties' motions for class certification and summary judgment, and attending and participating in the January 19, 2021 mediation in its entirety. (Ho Dec. ¶7)

Diamond Griffth, unlike Toni Fore, received a weekend premium during a week in which all of her overtime was paid at time and a half of her lower first shift wage rates. Therefore, whereas Froedtert could argue that Fore was not an adequate representative on the weekend differential overtime claim because she suffered no damages, in that she received more overtime pay than she would have received had it been correctly computed using the regular rate method, that same argument would not work against Griffith. Griffith's agreement to serve as a Named Plaintiff and Class representative was thus essential to the settlement of the weekend differential overtime claim; and indeed to the settlement as a whole by making some class recovery, and thus an award of attorneys' fees and costs against Froedtert more likely. (Ho Dec. ¶8). Griffith performed additional services for the class by reviewing and approving a declaration in support of the Plaintiffs 'motion to add her as a Named Plaintiff, and by attending and participating throughout the January 19, 2021 mediation. (Ho Dec. ¶8)

**ARGUMENT**

**I.     The Court Should Approve the Petitioned for Attorneys' Fees.**

In the Seventh Circuit, a common fund case is defined as any case where Plaintiff counsel recovers attorneys' fees from a fund used to pay the class's claims, rather than from a direct payment by the defendant. *Sutton v. Bernard*, 504 F. 3d 688, 692-693 (7th Cir. 2007). When a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover fees out of the fund." *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 563 (7th Cir. 1994) ("*Florin I*"). The court then determines the amount of attorneys' fees that plaintiff's counsel may recover from this fund. *Id.* The common fund doctrine is based on the notion that "all those who have benefitted from the litigation should share its costs.'" *Id.* at 43 F.3d at 563 (citation omitted).

The Seventh Circuit uses a "market-based approach" to set the percentage of the total settlement, from the common fund, to be awarded as reasonable attorneys' fees. Under this approach, the district court "is required to estimate the terms of a contract [that] private plaintiffs would have negotiated with the attorneys at the outset of the case, with reference to benchmarks, such as the actual agreements between the class members and their attorneys, data from other suits, and auctions for legal services." 7B Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF CIVIL PROCEDURE, § 1803.1 (3d ed. & 2008 Supp.). In applying this framework, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Steinlauf v. Continental Illinois Corp.*, 962 F.2d 566, 568 (7th Cir. 1992). This analysis focuses on the rate that the class and class counsel, as willing buyers and sellers of legal services, would have negotiated before this case was filed.

*Downes v. Wisconsin Energy Corp. Retirement Account Plan*, 2012 WL 1410023 * 4 (E.D. WI. 2012). In determining the reasonable market rate the Court should take into account the risk of non-payment, i.e. that the class and therefore class counsel would not recover anything if the Defendant prevailed in contingency fee litigation. *In re Synthroid Marketing Litigation*, 264 F. 3d 712, 718 (7th Cir. 2001).

The first piece of evidence for the market rate for Previant's services is the actual retainer agreement between Previant and Fore and Griffith, which provides that Previant is entitled to 1/3 of the recovery after offsets for costs if any amounts are recovered for Fore and Griffith, but nothing (including no reimbursement for advanced costs) if nothing is recovered for Fore and Griffith. (Ho Dec. ¶2-3) The retainer agreement between Previant and Fore and Griffith is consistent with the area standard in Southeast Wisconsin, which sets attorneys' fees equal to 1/3 of the maximum class recovery achieved through settlement as the market rate between willing buyers and sellers in class action wage and hour cases. *Benoskie v. Kerry Foods*, 2020 WL 5769488 * 3 (E.D. WI. 2020); *Pintor v. Hypro Inc.*, 2018 WL 4705847 * 1 (E.D. WI. 2018).

To the extent the Court is concerned that this case involves a substantially larger common fund than the common funds in those cases, the Western District of Wisconsin's decision on a fee petition in *Dexter v. Ministry Healthcare* is instructive. In that case, which was resolved before any motions for class certification or summary judgment were filed, the Court awarded to Previant and co-counsel total attorneys' fees of $330,000 out of a common fund of $1.1 million though it characterized the case as "straightforward". (Ho Dec. Ex. 3, pg. 5) The Court based this award on its finding that in contingency fee wage and hour cases, the market rate is 25% if the case resolves early, 33% if the case survives the summary judgment stage, and 40% if the case proceeds to trial. (Ho Dec. Ex. 3, pg. 5) In this case, the parties filed a stipulation with the Court to refer this matter

to mediation on October 23, 2020; almost immediately after they completed briefing on their cross motions for summary judgment on October 13, 2020. (Docket #85, #89) It would thus be reasonable to infer that Froedtert agreed to mediation after reviewing the Plaintiffs' summary judgment submissions, so that this case effectively survived the summary judgment stage, and an attorneys' fee of 33% of the class recovery would reflect market rates. See also *Collins v. Kohl's Department Store Inc*., Case 18-CV-962, see docket #181, 189. (Award attorneys' fees equal to exactly 1/3 of common fund of $2.9 million plus costs in excess of $34,000).

Indeed, considering secondary factors would suggest that the market rate for Previant's legal services should be adjusted upward from 33% of the class recovery. Factors for a court to consider when setting the market rate for an attorneys' services as a percentage of the class recovery include the risks of non-payment that a firm agrees to bear, the quality of the firm's performance, the amount of work necessary to resolve the litigation, and the stakes of the case. *In re Synthroid Marketing Litigation*, 264 F. 3d at 721. Each of these factors support an upward adjustment from 33% of the recovery as the market rate for Previant's services: Previant's risks of non-recovery in representing the Plaintiffs on a contingency fee basis were quite high because at the time the lawsuit was filed each of the claims advanced either presented novel questions of law; or invited Froedtert to present defenses that presented novel questions of law. (Ho Dec. ¶5) Previant's services were excellent in that the class recovered about 57% of Froedtert's realistic maximum liability, a ratio that looks even better when the Court takes into account that (a) absent settlement most of Froedtert's potential liability of $485,000 for FLSA liquidated damages would not be paid as most class members would not have filed claim forms required to participate in the FLSA litigation; and (b) but for the settlement there would have been a substantial delay to the resolution of this lawsuit as the parties would need to await the Court's decisions on class

certification and summary judgment, provide notice to class members as appropriate, and try any issues that may remain after the Court decides summary judgment. The amount of work required to convince Froedtert to engage in mediation and to then successfully produce, administer, and secure court approval for a settlement was more than 300 hours, which represented a substantial investment of attorney work hours by Previant. (Ho Dec. Ex. 1) The stakes in the case at more than $2 million for Froedtert's current and former employees are quite high.

Though Previant is arguably entitled to an attorneys' fee in excess of 33% of the common fund of $1.2 million, it is actually only seeking attorneys' fees of $358,618.35 after reimbursement of $1,381.65 in costs that it advanced. (Ho Dec. Ex. 2) Attorneys' fees of $358,618.35 represent less than 30% of the total class recovery of $1.2 million. If the Court were to exclude the just under $90,000 in administrative costs when computing the percentage of attorneys' fee, the $358,618.35 represents about 32% of a total class recovery in excess of $1.11 million dollars. (Schwartz Dec. ¶15) Whether the Court includes or excludes administrative costs when assessing the reasonableness of Previant's petitiond for fee, the fee petition should be granted as below the market rate for Previant's services equal to 33% of the common fund that was achieved through settlement.

There is no need for the Court to conduct a Lodestar cross-check to ensure that the petitioned for attorneys' fees are reasonable. Attorney and client may agree to a contingency fee that is higher than the amount of statutory attorneys' fees that Plaintiff may be entitled to recover from the Defendant should she prevail in the litigation. *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990). As the Seventh Circuit noted, one advantage of the contingent fee is that the client (or the judge as protector of the class's interests) need not monitor how many hours the lawyers prudently devoted to the case because the client cares about the outcome alone. *In re Synthroid Marketing*

*Litigation*, 325 F. 3d 974, 979-980 (7th Cir. 2003). Counsel's efficiency therefore should not be relied upon to reduce class counsel's share of the common fund that their work produced. *See Id*. *See also Will v. General Dynamics Corp*., 2010 WL 4818174 * 3 (S.D. IL. 2010) (Use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive); *In re Comdisco Securities Litigation*, 150 F. Supp. 2d 943, 948 (N.D. IL. 2003) (Ex post reevaluation of a percentage attorneys' fee using a Lodestar cross check even with a multiplier is truly unjustified as a matter of logical analysis especially when the attorney would not be entitled to a larger attorneys' fee had he spent more than the expected number of hours to achieve a desirable litigation result). Similarly, the Court should not encourage class counsel to be less efficient in resolving litigation by insisting on conducting a Lodestar cross check upon the market value percentage recovery that class counsel is entitled to receive.

    2.    <u>The Court Should Approve the Petitioned for Incentive Awards for Fore and Griffith</u>.

In employment litigation, the Eastern District of Wisconsin routinely awards class representative incentive awards to the Named Plaintiff who served as the Class Representative. *Benoskie*, 2020 WL 5769488 *4-5; *citing Velez v. Majik Cleaning Service, Inc*., 2007 WL 7232783 * 7 (S.D. N.Y. 2007) (In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or coworkers.) Class representative incentive awards serve the important purpose of compensating the class representative for the risks that she assumed to pay the Defendants' costs; and for any time spent sitting for depositions and otherwise participating in the litigation as any plaintiff must do. *Espenscheid v. DirectSat USA*, 688 F. 3d 872, 877 (7th Cir. 2012).

*Benoskie* set the upper limit of a reasonable incentive award in this district. In that case, which was settled before the Plaintiffs even filed a motion for conditional certification, the Court awarded to the Named Plaintiff an incentive award of $5,000 out of a maximum class recovery of $75,000. See 2020 WL 5769488 * 1, 5. Larger incentive awards are appropriate where the class representatives' work produced a larger class recovery. *See Collins v. Kohl's Department Store Inc*., Case 18-CV-962, see docket #181, 189 (Awarding service awards of $20,000 for the lead plaintiff, $10,000 each to four other plaintiffs, and $5,000 each to four other plaintiffs out of a total common fund of $2.9 million dollars); *Johnson v. National Technologies*, case 18-CV-462, see docket #31-1, pg. 5; #57 (Approve incentive award of $8,500 for a total common fund of just over $200,000).

The proposed service award of $10,000 for Fore falls easily within the parameters set by the above cases. But for Fore's willingness to step forward as the sole plaintiff in this case, which exposed her to be deposed by Froedtert, to pay Froedtert's costs should the litigation be unsuccessful, and potentially risked her future prospects for employment in the healthcare industry, no recovery for a single collective or class member would have been possible. Fore also provided additional services to the class by responding to written discovery, by sitting for a deposition, and by participating throughout a full day mediation. (Ho Dec. ¶7) Fore is seeking a service award of $10,000 out of a common fund of $1.2 million, which is comparable to the ratio between the size of the service award for the lead plaintiff and the common fund in *Collins*; but represents a far smaller percentage of the common fund when compared to cases such as *Benoskie* and *Johnson*, in which the Court awarded incentive awards equal to five percent and four percent of the class recovery, respectively. A $10,000 service award for Fore should be approved as proportionate and appropriate.

The proposed service award of $5,000 for Griffith also easily falls within the parameters set by the above cases. During the litigation, Froedtert did not dispute that it failed to but should have included weekend differentials when computing its employees' overtime pay, but argued that Fore was not entitled to a recovery and lacked standing to represent the class on the weekend differential claim because though it computed Fore's overtime pay using the rate for the type of work method without including the weekend differentials, it still paid to her more overtime pay than she would have received had her overtime pay been computed using the regular rate method. (Docket #31, pg. 14-17) Griffith, unlike Fore, had workweeks during which all of her overtime was paid at time and a half her lower, first shift wage rate; so that she would receive more overtime pay had weekend differentials been included in computing her overtime pay using either the rate for the type of work or the regular rate method.  See explanation at docket #70, pg. 7-8. Griffith's participation in this lawsuit not only strengthened the Plaintiffs' claims for class certification and liability on the weekend differential claim; and also increased the probability that Froedtert would have liability on at least one class claim, so that the prospect of paying the Plaintiffs' attorneys' fees would have increased settlement pressure on Froedtert.  Griffith therefore performed a very valuable service to the class by agreeing to serve as a Named Plaintiff, though appearing on the other side of the v from a major hospital system such as Froedtert may expose her to paying Froedtert's costs, may lead to Froedtert requesting to take her deposition, and may jeopardize her future prospects for employment in the healthcare industry.  A modest incentive award of $5,000 for Griffith, so that a modest 1.25% of the total settlement fund is paid out as incentive awards (as compared to Collins, in which $80,000 or close to 3% of a total settlement fund of $2.9 million was paid out as incentive awards) should be approved by the Court.

CONCLUSION

For the above stated reasons, Plaintiffs respectfully request that the Court grant incentive awards of $10,000 to Toni Fore and $5,000 to Diamond Griffith; while the Previant Law Firm S.C. respectfully petitions the Court for total attorneys' fees of $360,000.

Dated this 21th day of December, 2021.

                                                  s/Yingtao Ho
                                                 YINGTAO HO
                                                 Wisconsin State Bar No. 1045418
                                                 The Previant Law Firm, s.c.
                                                 310 W. Wisconsin Avenue, Suite 100MW
                                                 Milwaukee, WI   53203
                                                 Phone 414/271-4500
                                                 Fax 414/271-6308
                                                 yh@previant.com

                                                 Attorneys for Plaintiffs